UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUCILLE TAGLIERE, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> HARRAH'S ILLINOIS CORPORATION ) <br> d/b/a HARRAH'S CASINO JOLIET, ) <br> ) <br> DEFENDANT. ) | NO. 04 C 5258 <br><br> Judge Arlander Keys |

**MEMORANDUM OPINION AND ORDER**

Currently before the Court is Defendant's Motion to Dismiss. Plaintiff, a patron in Defendant's riverboat casino, sued Defendant under Federal Admiralty and Maritime Laws, 28 U.S.C. § 1333(1) (West 2005), for injuries suffered while in the casino. Defendant moves to dismiss for lack of jurisdiction. The Court agrees and, for the reasons set forth below, grants Defendant's Motion.

**Background Facts**

On August 19, 2001, Plaintiff, Lucille Tagliere, entered the premises of Defendant Harrah's Illinois Corporation, d/b/a Harrah's Casino Joliet (Harrah's Casino), a riverboat casino, to gamble and otherwise patronize Harrah's Casino. While there, Ms. Tagliere apparently sat upon a chair, fell to the floor, and suffered "severe injuries of a personal and pecuniary nature." Pl.'s Comp. at ¶¶ 11-12. Ms. Tagliere alleges that Harrah's negligence was the direct and proximate cause of her injuries.

*Id.* at ¶¶ 10-12.

At the time of Ms. Tagliere's accident, Harrah's Casino was a permanently moored riverboat[1]. *See* Aff. Of Brent Willits. On June 26, 1999, the Illinois legislature amended existing laws to allow dockside gambling on moored vessels. Harrah's riverboat has not been used to transport cargo or passengers since that time. Aff. Of Brent Willits.

**Procedural History**

Ms. Tagliere filed suit in federal court on August 10, 2004. The case was originally assigned to Judge David H. Coar. Defendant filed a Motion to Dismiss for lack of subject matter jurisdiction on October 26, 2004. On December 3, 2004, the parties consented to proceed before a Magistrate Judge, and the case was reassigned to this Court.

**Discussion**

Plaintiff asserts that this Court has jurisdiction over this matter pursuant to the Federal Admiralty and Maritime Laws of the United States, 28 U.S.C. § 1331(1) (West 2005). Defendant disagrees, arguing that the Seventh Circuit has recently ruled that federal courts do not have maritime jurisdiction over permanently moored casinos, citing *Howard v. Southern Illinois*

---

[1] The riverboat in question is known as the Southern Star.

*Riverboat Casino Cruises, Inc.* 364 F.3d 854 (7th Cir. 2004)[2].

Defendant overstates the Seventh Circuit's holding. In *Howard*, the Seventh Circuit analyzed whether an employee injured while working on a moored casino can sue his employer under the Jones Act, 46 App U.S.C.A. § 688(a). *Id.* at 858. A plaintiff satisfies the jurisdictional requirements of the Jones Act if he can demonstrate that: 1) his duties contributed to the function of the vessel; and 2) he has a "'substantial employment-related connection to a vessel *in navigation*.'" *Id.* at 856 (emphasis added) (quoting *Chandris, Inc. v. Latsis*, 515 U.S. 347, 373 (1995). In focusing upon whether a moored casino riverboat is a vessel *in navigation*, the court looked to the casino's purpose and actual use. The court concluded that "an indefinitely moored dockside casino with no transportation function or purpose is not a vessel 'in navigation.'" *Howard*, 364 F.3d at 857.

Notably, the test for determining jurisdiction under the Jones Act is different from the test for determining jurisdiction under general admiralty and maritime law; unlike the dispute presented in the *Howard* case, the present inquiry does not hinge upon the existence of a "vessel in navigation."

Traditionally, in determining whether federal admiralty or maritime jurisdiction exists, courts analyzed whether the tort

---

[2] Defendant concedes that the *Howard* court was analyzing the Jones Act, but insists that the analysis controls in the instant case.

occurred on navigable waters. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531 (1995). The United States Supreme Court further refined the test, in *Executive Jet Aviation, Inc. V. City of Cleveland*, 409 U.S. 249 (1972), by requiring parties seeking federal maritime jurisdiction to also establish that the underlying incident had some connection with maritime activity. *Id.* at 534.

Three subsequent Supreme Court opinions further defined the scope of the new "nexus test" announced in *Executive Jet*. In *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 675 (1982), the Court found that the collision of two pleasure boats had the requisite nexus to maritime activity, because of the potentially disruptive impact the collision may have had on maritime commerce, coupled with the traditional admiralty court concern over navigation. In *Sisson v. Ruby*, 497 U.S. 358, 362 (1990), the Court restated the nexus test, requiring: 1) the potential disruptive impact on maritime commerce; and 2) the activity giving rise to the incident must bear a substantial relationship to maritime commerce. The *Sisson* Court instructed that the proper analysis must focus on the general features of the incident involved, and must look at the potential, as opposed to actual, disruption to commerce. *Id.* at 363.

Finally, in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 539 (1995), the Supreme Court again noted

that the first prong of the nexus test turned on "a description of the incident at an intermediate level of possible generality." The second prong of the nexus test hinged upon "whether a tortfeasor's activity . . .is so closely related to activity traditionally subject to admiralty law that the reasons for applying the special admiralty rules would apply in the suit at hand." *Id.* at 539-40.

Together, *Executive Jet, Foremost, Sisson,* and *Grubart,* developed a two part test for determining maritime jurisdiction, now referred to as the Locality and Nexus Tests. However, the Locality and Nexus tests do not even come into play, if the permanently moored casino riverboat is not a "vessel" under maritime law.

## I. Harrah's Casino is a Vessel

Although Defendant asks that the Court look to the Casino's activities in relation to its arguments concerning nexus - ie, that the casino is more like a dockside marina or restaurant than a vessel -- the argument raises the issue of whether Harrah's Casino is a vessel under maritime law. Under maritime law, "a craft is a 'vessel' if its purpose is to some reasonable degree 'the *tranportation* of passengers, cargo, or equipment from place to place across navigable waters.'" *Great Lakes Dredge & Dock Co. v. City of Chicago,* 3 F.3d 225, 229 (7th Cir. 1993).

The United States Supreme Court found that a "warfboat," which was used as an office, warehouse, and warf, was not a vessel, because it was "not practically capable of being used as a means of transportation." *Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co.*, 271 U.S. 19, 22 (1926) (noting that the boat had permanent utility connections to land and, because it did not navigate, it was not exposed to the perils of navigation). The Court noted that the warfboat "performed no function that might not have been performed as well by an appropriate structure on land." *Id.* More recently, the Fifth Circuit ruled that an indefinitely moored floating dockside casino was not a "vessel" under either the Jones Act or general maritime law. *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, (5th Cir. 1995).

However, the Seventh Circuit ruled in *Howard* that an indefinitely moored casino is, in fact a vessel. 364 F.3d at 856. The court noted that the riverboat was connected to land-based utilities, and that it had not left the dockside since the 1999 change in legislation, except in connection with propulsion tests required by the Coast Guard. *Id.* Nevertheless, the court ruled that the casino was a vessel, stating: "to be precise, it is clear the *Players II* is a vessel." *Id.* The court did not explain whether its decision hinged upon the periodic Coast Guard testing, or simply the casino's potential for cruising. Pursuant

to this precedent, this Court concludes that the Harrah's Casino riverboat is a vessel.

## II. The Incident Does Not Satisfy the Nexus Test

Having determined that Harrah's Casino is a vessel, the Court must now determine whether it satisfies both the locality and nexus tests for jurisdiction.

### 1. The Locality Test

The locality test "reflects the traditional requirement that a tort occur on navigable waters." *Weaver v. Hollywood Casino-Aurora, Inc.*, 255 F.3d 379, 382 (7th Cir. 2001). Although the test for determining whether a tort occurred on navigable waters can be challenging, *see Svendsen v. Hollywood Casino-Aurora, Inc.*, No. 01 C 8408, 2002 WL 1424565 (N.D. Ill. July 1, 2002), the present case is straightforward.

Plaintiff's Complaint alleges that the injury took place on the Illinois River, near 151 N. Jefferson Street, in Joliet, Illinois. Pl.'s Comp. At ¶ 6. *See generally, Rexford Rand Corp. v. Ancel,* 58 F.3d 1215, 1218 (7th Cir. 1995) (A court may accept good faith allegations of jurisdictional facts that are not challenged.) There is no evidence before the Court that the relevant portion of the Illinois River is not navigable, and Defendant essentially concedes that the incident - if it occurred at all - took place on navigable waters. *See generally, Svendsen*, 2002 WL 1424565, at *1("where the parties have

submitted evidentiary material relevant to a motion to dismiss for lack of subject matter jurisdiction, such evidence may be considered when reviewing the motion.") Therefore, the Court readily concludes that Plaintiff has satisfied her burden under the locality test.

## 2. The Nexus Test

The United States Supreme Court has stated that, although its precedent does "not say that every tort involving a vessel on navigable waters falls within the scope of admiralty jurisdiction no matter what, they do show that ordinarily that will be so." *Grubart*, 513 U.S. at 543. However, this Court is of the opinion that the present case is the exception to the rule. Neither the Supreme Court nor the Seventh Circuit has determined whether a personal injury aboard a permanently moored casino invokes maritime jurisdiction. Those courts that have been confronted with that precise question have found that jurisdiction does not exist. While this is a close case, the Court is persuaded that the injury presented here does not have the requisite maritime connection.

To satisfy the first prong of the nexus test, the incident must have a potentially disruptive impact on maritime commerce. *Weaver v. Hollywood Casino-Aurora, Inc.*, 255 F.3d 379, 386 (7th Cir. 2001) (noting that the incident need not actually disrupt maritime commerce). For example, in *Sisson v. Ruby*, 497 U.S. 358

(1990)[3], the Supreme Court concluded that a fire aboard a recreation boat docked at a marina satisfied the first prong of the nexus test, because the fire had the potential to spread to commercial vessels engaged in maritime commerce. Conversely, the Ninth Circuit concluded that there was no potential disruption to maritime commerce where houseboat occupants were injured by carbon monoxide fumes, because there was no potential harm to other vessels. *See, e.g., H20 Houseboat Vacations, Inc. v. Hernandez*, 103 F.3d 914 (9th Cir. 1996).

In applying this test, courts must assess the general features or character of the activity giving rise to the incident. *Grubart, Inc.*, 513 U.S. at 538. Selecting the appropriate description for the incident is critical; "we might get a different result simply by characterizing the 'activity' in question at a different level of generality." *Id.* at 541-42.

The Seventh Circuit's discussion of competing definitions in *Weaver v. Hollywood Casino-Aurora, Inc.*, 255 F.3d 379 (7th Cir. 2001) is instructive. The *Weaver* defendant described the

---

[3] The Supreme Court in *Sisson* recognized that, whether or not an incident satisfied the nexus test often hinges upon the level of generality used to describe the incident in question. 497 U.S. at 363. The *Sisson* Court instructed that a court should not be bound by the specific facts of the case before it, but must instead "assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activities.'" *Id.* at 363. In the instant case, neither party attempted to define the incident in question.

9

underlying tort as "'an injury to a slot machine attendant on a floating casino that cannot move beyond a confined area of water,'" while the plaintiff offered a more general description of the tort: "'an injury occurring during rescue efforts on a vessel on navigable waters.'" 255 F.3d at 385. The court concluded that the defendant's definition of the incident was too narrow, and instead found that the "more appropriate description would be an injury on board a vessel on navigable waters." *Id.* at 386 (finding the requisite nexus to maritime activity.)

Similarly, defining the present incident as a gaming patron's fall from a bar stool, while aboard a permanently moored, floating casino wins the day for Defendant. But *Weaver* makes clear that such a definition is impermissibly narrow and specific. Instead, the Court finds that the appropriate definition is a personal injury on board a moored vessel on navigable waters. The Court finds that the fact that the vessel was permanently moored is a critical aspect of this incident and should be included in the general description.

Having defined the incident, the next step is to determine the potential for the disruption of maritime commerce. The *Weaver* court readily found the requisite nexus, because the casino "was a commercial boat engaged in the *transport* of passengers for profit . . . and without a doubt an injury to one of its *crew* disrupts its participation in maritime commerce."

255 F.3d at 386. Conversely, Harrah's Casino is not engaged in the transport of passengers. The injury of a passenger aboard a moored vessel certainly does not present the potential risk to maritime commerce that the injury to a crew member aboard a navigating vessel does.

The Court acknowledges that Harrah's Casino's status as a moored vessel is not dispositive; as discussed above, the Supreme Court in *Sisson* found that the fire aboard a boat docked in a marina had the potential to disrupt maritime commerce, because the fire could have "spread to nearby commercial vessels or ma[d]e the marina inaccessible to such vessles." 497 U.S. at 362. Unlike a fire, it is difficult to see how Plaintiff's injury could have disrupted either Harrah's business, or the maritime commerce of nearby commercial vessels.

The Court concludes that an injury to a patron aboard a vessel that is permanently moored does not potentially disrupt maritime commerce. *See Arch v. Treasure Chest Casino, LLC.*, 306 S. Supp.2d 640, 646 (E.D. La. 2004) (finding that a crew member's injury aboard a permanently moored casino did not have the requisite nexus for maritime jurisdiction.)

Even if the Court were to conclude that Plaintiff had satisfied the first prong of the nexus test, Plaintiff cannot satisfy the second prong of the nexus test, because the activity giving rise to the incident did not arise out of traditional

maritime activity.  In *Grubart*, the Supreme Court stated that courts should look to the "activity giving rise to the incident" to see if it bore a "substantial relationship" to traditional maritime activity.  513 U.S. at 541.  The Court summarized its prior decisions, and noted that the navigation of vessels on navigable waters clearly satisfies the test, *Id.* at 540 (citing *Foremost*, 457 U.S. at 675); that storing a boat at a marina on navigable waters is close enough, *Id.* (citing *Sisson*, 497 U.S. at 367); but that flying an airplane over the water or swimming is too attenuated to satisfy the test. *Id.* (citing *Executive Jet*, 409 U.S. at 270-71 and 255-56.)

In the instant case, running a casino is not a traditional maritime activity.  While the Seventh Circuit found the requisite connection in *Weaver*, which also involved a riverboat casino, the court's decision hinged upon the fact that the casino was navigating and transporting passengers, noting that "even noncommercial vessels *when navigating in navigable waters* have a substantial relationship to traditional maritime activities." 255 F.3d at 386 (citing *Foremost Ins. Co. v. Richardson*, 457 U.S. 668 (1982)).

Conversely, in the instant case, Harrah's Casino was not navigating at the time the incident occurred.  Rather, the riverboat was moored at the dock, and had been for over two years.  A riverboat that is not transporting cargo or passengers

is not – like the riverboat in *Weaver* could be said to be – engaged in the transport of passengers for profit. The riverboat's only purpose is gaming, and Plaintiff has failed to identify any caselaw connecting gaming or gambling to traditional maritime activity. *See, e.g.Davis v. Players Lake Charles Riverboat Inc.*, 74 F. Supp.2d 675, 676 (W.D. La. 1999) ("gaming is not substantially related to a traditional maritime activity.") Therefore, the Court finds that Plaintiff cannot satisfy the nexus test for maritime jurisdiction.

**Conclusion**

Having determined that Plaintiff cannot satisfy the nexus test, the Court agrees that federal admiralty or maritime jurisdiction does not exist. Therefore, the Defendant's Motion to Dismiss for lack of jurisdiction is granted.

Dated: May 10, 2005

ENTER:

*/s/ Arlander Keys*
ARLANDER KEYS
United States Magistrate Judge